## LONG *vs.* YOUNG.

1. The statute of limitations does not run aganinst the true owner of land, in favor of the tenant in possession while he disclaims title in himself, and is seeking the true owner with the avowed purpose of purchasing of him; and it is immaterial whether this disclaimer and recognition of title in another, be made before or after the seven years' bar has attached.
2. Cutting fire wood and rail timber on land are not such acts of ownership as to constitute adverse possession.

Ejectment, from Union county. Tried before Judge RICE, at May Term, 1858.

This was an action of ejectment brought by John Doe, *ex dem.* George H. Young, against Richard Roe, casual ejector, and Charles Long, tenant in possession, for the recovery of lot of land number 90, in the eleventh district and first section of Union county.

The defendant relied upon the statute of limitations.

### Evidence for Plaintiff.

*Gabriel Wooten* proved that Long was in the possession of the lot of land sued for at the commencement of the suit, and had been in possession six or seven years.

*Tobias Wooten,* proved that Long was in possession—describes the location of the lot and improvements thereon —adjoins lot No. 91, and most of the improvements are on No. 91. When Long went into possession there were about three acres cleared on No. 90. Witness cultivated it the year before Long went on it—there are now some twenty or twenty-five acres cleared on the lot—Long cleared it—worth three dollars per acre to clear land. Long commenced clearing the last of 1850. Thinks the land worth twenty-five dollars per year for rent.

Plaintiff then offered in evidence the grant from the State to his lessor, George H. Young, dated 19th December, 1842, and closed.

### Evidence for Defendant.

*John S. Waters,* testified that he bought the lot in dispute, (No. 90,) from Charles Stargel, and went into possession in the year 1838 and remained on it ten years, and then let Long have it—there had been about three acres of the lot cleared and in cultivation some years previously—that he cultivated the land some ten years continuously—the unimproved portion of the lot he claimed and used as his own by getting rail timber, fire wood, &c., and exercised acts of ownership over it openly and notoriously, as persons usually do over their uncultivated

lands similarly situated. He sold it to Long, who went into possession in 1850. Witness moved off in 1848 or 1849, but left his son on the lot until Long entered in 1850.

*Cross-Examined.*—He bought the *improvements* on said lot, and he sold the *improvements* to Long—when he bought from Stargel, he bought the improvements and he sold the same to Long—the improvements were mainly on the adjoining lot, but extended over to this lot, and he cultivated a strip of about twenty-five yards wide at the widest place, and about seventy-five yards long, on lot 90. Does not know when Long went on the land—witness left his son on the place, who made one crop on it. Does not know, of his own knowledge, that Long ever went on the land. Witness claimed and cultivated said land ten years and then sold it to Long—he purchased *only* the improvements, but claimed title to the whole. He sold the *improvements* to Long and he supposed Long lived on the land some seven or eight years.

*James Gurley, Sr.*, testified that he knew lot of land in dispute, (No. 90.) John Waters was on it some eight or ten years—when Waters left it Long went on it—when Waters lived on it, there were some two or three acres cleared—Long cleared some ten acres on the lot two or three years ago, and lived on it about three years afterwards, before he moved away in March, 1854.

*Cross-Examined.*—Long left last March was a year ago. When Long left he sold to Charles Davis—the land has been in cultivation every year, so far as witness knows—did not see it every year—does not know whether Waters was on it every year or not—was there every time witness passed or saw the place—did not see it every year.

Defendant closed, and plaintiff introduced in reply,

*John Butt*, who testified that he had two conversations with Long in 1855 or 1856, about this lot of land. Long told him that he bought the improvements on the lot

from Waters, and he had sold his interest in the land to Charles Davis—that they had been sued, and Long wanted to know whether he must come back and attend to the suit, and said he had only given a quit claim deed to said land—Long also said that the owner of the lot had never been to see it—that he did not know who the owner was—that he had applied to Col. Varnum to hunt him up and to buy the land for him.

Counsel for defendant objected to the sayings of Long, after he had sold to Davis, and had gone out of the possession of the premises—objection overruled by the court.

*Cross-Examined.*—Did not know whether Long said that he had sold his interest in the land or the improvements. Long said that the owner had not been there, and that he would like to purchase the land if he could find the *owner*, and that he had asked Col. Varnum to purchase it from the owner for him. This conversation occurred a short time before Long moved to Alabama.

Defendant objected to the sayings or admissions of Long, made after he had sold the land and was out of possession, which objection was overruled by the court, and the same were allowed to go to the jury.

The court charged the jury, amongst other things, that the defendant must not only show an actual continuous possession of the premises, but his possession must also be adverse to the title of the true owner. A possession with an assertion of ownership is adverse possession—the occupancy must be with the intent to claim the fee as against the true owner. The statute of limitations does not run against the owner in favor of one in possession, while he disclaims title, and any acknowledgement that he is not the owner, or recognition of the legal title held by another, amounts to a disclaimer; and the sayings and declarations made by Long as to the land being owned by another, and his wish and effort to purchase it, if

believed to have been made, amount to a disclaimer of title in himself.

That when one goes into possession of land under a deed of conveyance, his possession extends to the boundaries called for or mentioned in his deed, but when he goes in without paper title, then his possession is confined to his actual occupation. The defendant then, relies on mere naked possession, and since the act of 22nd January, 1852, possession alone without title or color of title does not constitute adverse possession, but such possession is held and deemed subordinate to the legal title. Previous to the passage of the above mentioned act, actual possession with a claim of right continued for seven years, constituted a good statutory title—a title sufficient to defeat the recovery by the person having the legal title. If the defendant has proved that a portion of the lot in question had been inclosed and cultivated seven years or more, prior to the 22nd January, 1852, and has also proved that he, or those under whom he claims, had a continuous adverse possession with a claim of right, (that is, claiming the fee,) then he is intitled to that portion, and the plaintiff cannot recover that part. But as to so much as was not thus enclosed and cultivated, the court charged that defendant had no title, and that cutting fire wood and rail timber on the land were not such acts of ownership as constituted an adverse claim or possession; and that the statute of limitations did not commence to run in favor of the tenant in possession, until the grant from the State issued, which, in this case was the 19th December, 1842.

Defendant requested the court to charge the jury, that if Long or any other person in possession, did not make any disclaimer of title or acknowledgement of ownership in another, until after the expiration of seven years, then such disclaimer or acknowledgement could not affect a

title already accrued under the statute of limitations. Which charge the court refused to give.

To all of which charge and refusal to charge defendant excepted and assigned the same as error.

The jury found for the plaintiff, and defendant moved for a new trial, on the ground :   ·

1st. Because the verdict was contrary to evidence and the weight of evidence.

2nd. Because the court erred in its charge to the jury, and its refusal to charge as requested.

The court refused the motion for a new trial, and counsel for defendant excepted and assigned the same as error.

FRANCIS, for plaintiff in error.

BROWN, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

It is not disputed but that the title to the lot of land sued for in this case, is in the plaintiff. The defendant seeks to protect himself against a recovery, under the plea of the statute of limitations. The lot in dispute is No. 90 in the 11th district and 1st section. It adjoins No. 91. There was an improvement on 91 which was bought by the predecessor of Long, and sold to him, and by him to Davis. They extended their clearing over into 90. None of them ever pretended to own or convey the fee of either of the lots, but simply the *improvements* thereon ; which, as we understand the term, amounts to nothing more than a squatter claim, which is good until the tenant in fee asserts his paramont right.

There never was, therefore, an adverse holding of the premises in dispute in the legal meaning of that phrase. Long, the defendant, stated distinctly to the witness Butt, that the owner of the land had never come to see it, and that he did not know who the owner was. That he had

bought the *improvements* from Waters; and that he requested Col. Varnum to hunt up the owner and purchase the land for him. That he would like to buy the land, if he could find the owner.

It is objected that this disclaimer of title was made after the bar of seven years had attached. What of that? It shows he never owned the land or claimed it as his own. And this doctrine we decided at Macon recently.

It is futher objected that Long had sold his interest to Davis, when he made this disclaimer. There is much confusion in the testimony upon this point, to-wit: whether he had left the land or not when the disclaimer was made. Be that as it may: this action is brought against Long, and no body else, and he is bound by the disclaimer. The court submitted the question to the jury whether the disclaimer was made while Long was in possession of the land.

Finding no error in the decision of the court as it respects this disclaimer, and believing that his charge to the jury was a correct exposition of the law upon all the points embraced in it, we affirm generally the judgment complained of.

Judgment affirmed.