### W. W. WILLIAMS ET AL. v. GEORGE W. RAND ET AL.

#### No. 1356.

1. **Execution of Writing—Signing Without Reading.**—The fact that one who has executed a written instrument could not read and did not know its contents, will not of itself and in the absence of fraud invalidate the instrument; it must further appear that he was himself free from negligence in the matter.

2. **Adverse Possession—Admission—Evidence.**—Where the bar of the statute of limitations is completed, and the title thereby vested in defendant, his subsequent admission that his prior possession was not adverse to plaintiff will not convey or destroy the title so acquired, the property being the homestead of himself and wife; but such admission may be considered by the jury in determining whether his possession during the ten years occupancy was in fact adverse.

3. **Same—Break in Inclosure.**—Mere temporary breaks in the inclosure around the premises, if enough of the fence remain to give notice of the extent of the adverse claim to the owner, will not stop the running of the statute of limitations.

4. **Possession as Notice.**—Where one has acquired title to a tract of land by adverse possession and limitations, his subsequent possession by residence on the tract, it seems, will operate as notice of his title and its actual extent on the tract to parties who purchase from the (former) record title owner a part of the tract not actually inclosed.

5. **Subsequent Purchaser—Conflicting Titles—Rule of Equity.**—In order for a subsequent purchaser to prevail over a prior owner, he must show the latter to have done or omitted something that makes it inequitable for him to interpose his otherwise superior title.

APPEAL from Mitchell.   Tried below before Hon. WM. KENNEDY.

*Davis, Beall & Kemp* and *Hunter & Foster*, for appellants.—1. The plaintiffs offered no deed of conveyance nor other evidence of title in writing, and the parol evidence of declarations made by Pierson and Williams were within the inhibition of the statute of frauds. Rev. Stats., art. 2464; Sprague v. Haines, 68 Texas, 217; Masterson v. Little, 75 Texas, 697; Westmoreland v. Carson & Co., 76 Texas, 619; Purcel v. Mince, 4 Wall., 513; Williams v. Morris, 5 Otto, 444–458.

2. As to adverse possession and title by limitation: Mhoon v. Cain, 77 Texas, 317; Bowles v. Brice, 66 Texas, 728; Flanagan v. Pierson, 61 Texas, 304; Wood on Landl. and Ten., p. 9, notes 14–30; Tyler on Ejectment, 876.

3. It was the duty of the court to charge the jury as to the legal effect of the instrument of writing (letter of admission) dated the 12th of October, 1880, in determining the issues as to whether the possession of George Rand was hostile or in amity with Pierson's title, prior

to its execution. Allen v. Koepsel, 77 Texas, 505; Warren v. Fredericks, 18 S. W. Rep., 750; Bracken v. Jones, 63 Texas, 188; Hurley v. Lockett, 72 Texas, 263; Church v. Burghardt, 8 Pick., 327; Mier v. Mier, 16 S. W. Rep., 223.

4. The court erred in failing to instruct the jury as to the effect of said instrument upon the rights and interest of Fewell, Mackay, Stanton, and Lesinsky, notwithstanding there was evidence before the jury that all of said parties had purchased said parcels of land in good faith, without notice, and for a valuable consideration, and held same under recorded warranty deeds. Patty v. Middleton, 82 Texas, 587; Hutchins v. Bacons, 46 Texas, 411; Barkley v. Tarrant County, 53 Texas, 251; Smith v. Miller, 63 Texas, 74; Brotherton v. Weathersby, 73 Texas, 472.

5. The court erred in refusing to charge on the issue of innocent purchaser, and refusing to give defendants' special charge intended to cure the omission. Patty v. Middleton, 82 Texas, 587; Hill v. Moore, 62 Texas, 611; Pouncey v. May, 76 Texas, 565; Edwards v. Brown, 68 Texas, 329; 1 Pom. Eq. Jur., sec. 147.

6. There is no sufficient description of the land claimed to have been sold by B. F. Williams to Rand, and the defendants' legal title and actual possession of a part of the land confined the possession of Rand to the actual land inclosed and occupied by him.

*H. H. Neill, Allen Blacker,* and *Z. B. Clardy,* for appellees.—1. If B. Williams made a verbal sale of the land in controversy while Rand was living on it with his wife, and it was the understanding between Williams and Rand that Rand was to continue in possession as the owner thereof, his possession would be adverse to the interest of Williams from the time of said verbal sale, and the statute of limitation would begin to run as against Williams and those claiming under him as to all the land sold, without regard to how much of the land was used or cultivated. Wood on Lim. of Actions, 527; Brown v. King, 5 Metc. (Mass.), 173; Magee v. Magee, 37 Miss., 138; Robertson v. Wood, 15 Ark., 1; Commonwealth v. Gibson, 85 Ky., 666; 4 S. W. Rep., 453; Moring v. Ables, 62 Miss., 263; Niles v. Davis, 60 Miss., 750; Potts v. Coleman, 67 Ala., 221; Tillman v. Spann, 68 Ala., 102; Taylor v. Dagger, 66 Ala., 445.

2. When a vendee has taken possession of land under a verbal contract, and under such contract claims it against his vendor and all the world as his property, the adverse holding begins, and if it continues for the statutory period of ten years, the possession ripens into a title. Branch v. Baker, 70 Texas, 195; Moody v. Holcomb, 26 Texas, 714; Bridges and Wife v. Johnson, 69 Texas, 716; Mims v. Rafel, 73 Texas, 300.

3. If W. W. Williams purchased the land in controversy from B. F. Williams subsequent to verbal sale from B. F. Williams to George Rand, and Rand being in possession of the premises then purchased

by Williams, he would be charged with notice, from the fact of Rand's possession, of the title and claim under and by virtue of which Rand held such possession; and no actual notice of a repudiation of Rand's prior tenancy under Williams and Pierson would be necessary to put the statute of limitation in motion against him.   2 Pom. Eq. Jur., sec. 615; Watkins v. Edwards, 23 Texas, 449; Mann v. Falcon, 25 Texas, 276; Mitchell v. Marr, 26 Texas, 331; Mainwaring v. Templeman, 51 Texas, 205.

4.   The admission contained in the letter of October 12, 1880, having been made after Rand's right to the property had become perfect by the required period of adverse possession, is of little importance, and of much less gravity than if it had been made at an earlier date, and as explanatory of the occupancy before the bar was complete.   Warren v. Fredericks, 83 Texas, 383.

5.   The appellees having been in peaceable and adverse possession for more than ten years of the land in controversy, prior to the time Fewell, Mackay, Stanton, and Lesinsky purchased their interests in it, and occupying it as a homestead during said period, acquired a perfect title thereto, which could not be divested except in the manner prescribed by our statutes for the conveyance of a homestead.   And the title acquired by limitation, being such a title as is not susceptible to registration, Fewell, Mackay, Stanton nor Lesinsky could avail themselves of the doctrine of purchasers in good faith for a valuable consideration without notice.   Branch v. Baker, 70 Texas, 195; Bridges v. Johnson, 69 Texas, 716; Mims v. Rafel, 73 Texas, 300.

HEAD, ASSOCIATE JUSTICE.—This is an action of trespass to try title by appellees against appellants for a block of land in the city of El Paso.   The paper title is agreed to be in appellants, and appellees rely entirely upon the ten years' statute of limitations.   Some of the appellants vouched in their warrantors.   The verdict was in favor of appellees for all the land except a small interest, and in favor of the appellants last referred to, against their warrantors, for purchase money and interest.   The court overruled appellants' motion for a new trial, but granted that of the warrantors.

In view of the fact that the right to make warrantors parties in suits of this kind is expressly given by statute, it may be seriously questioned as to whether or not the effect of granting a new trial to them was not also to vacate the judgment as to those of the appellants who brought them into the case.   Ordinarily, but one final judgment can be rendered in the trial court, which must entirely dispose of the subject of controversy as to all of the parties.   Wootters v. Kauffman, 67 Texas, 488.   It has been held, however, that in actions of trespass to try title, in which the defendants claim distinct parts of the land, the right to sever exists; and in such cases the granting of a new trial to one is in effect a severance as to him, and does not vacate the judgment as to the others.   Boone v. Hulsey, 71 Texas, 176.   Under this

decision, we therefore have in the record a final judgment, at least as to some of the appellants; and as we have concluded that it must be reversed, we will leave undecided the question first suggested. The effect will be the same, whether we grant the new trial or decide that it has already been granted by the trial court.

To show that the possession of Rand, relied upon by appellees to sustain their claim of title by limitation, was not adverse to them, appellants introduced in evidence the following instrument: "El Paso, Texas, October 12, 1880. Mr. Wm. Pearson—Dear Sir: Having had some conversation with W. M. Cook, attorney at law, relative to the property on which I now live, and have lived since 1864, I now wish to state, that there may be no misunderstanding, that I have lived there by permission of yourself and Mr. Williams, whilst living, and that I do not and never have claimed any title to said land, but have always known and recognized that the title was in you and Williams, and I only claim possession for you, always holding under you. What I do claim as just and proper is, that I should be entitled to something for my improvements, to wit, the house I have constructed, and more than fifty peach trees and about thirty plum trees growing. But, believing that you will do what is right, I rest content, and with your consent I will remain as heretofore. Respectfully, etc., George W. Rand."

As to the effect of this instrument, the court instructed the jury as follows: "In reference to the instrument of writing bearing the date October 12, 1880, you are instructed, that if on that date the title of the land in controversy had not been completed in George Rand by ten years' limitation, that if limitation had been running up to that time, but had not been running for as long a period as ten years, and if you find that George Rand signed and delivered said instrument to W. M. Cook, the agent of Williams and Pierson, then that would stop the running of the statute of limitations; and if you find the facts so to be, you will return a verdict for the defendants, unless you find that notwithstanding the said George Rand signed such instrument, that he could not read, and that he did not know the contents of the same, or unless you find that at the time he signed it he was intoxicated to such a degree that he was incapable of understanding, and did not understand, the nature and effect of his signing said instrument, and that he was incapable of understanding the contents of the same, in which case the signing and delivery of said instrument would not stop the running of limitation."

We are of opinion that material error was committed in that part of this charge which instructed the jury, that the fact that George Rand could not read and did not know the contents of the instrument would invalidate it. This would be true only in case he was himself free from negligence. In 2 Wharton on Evidence, section 1028, it is said: "Were a person who signs a deed or other contract able to avoid performing it on the ground that he was mistaken as to its effect, it would

be only necessary for him to omit reading the contract before signing it, in order to be bound or not, as he chose. It is the duty of every one executing such a writing to be aware of its contents before signing. It is against the policy of the law to permit those neglecting this duty to benefit by their neglect." Also, in Robertson v. Smith, 11 Texas, 217, the following language is used: "The original agreement entered into at Austin between Smith and Chalmers contained the stipulation that the former should assign to the latter the judgment in question. The reason assigned by him for refusing to do so, when called upon by Chalmers to execute their agreement, was that, when he accepted the proposition of the latter, he was not aware that it contained that stipulation. The evidence, however, will not warrant that conclusion. But whether he knew of the stipulation or not is immaterial, if no deception was practiced upon him, and by the use of ordinary diligence he might have known. There is no evidence that he was deceived or misled by any misrepresentation or concealment of the facts. If mistaken as to the terms of the proposition, it must be ascribed solely to his own carelessness or inattention, and for the consequences of these the party is himself alone responsible. They afford him no ground of relief against the stipulations of his contract." So, in Railway v. Burke, 1 White & Willson's Civil Cases, section 946, Quinan, Justice, says: "To overturn a written release because of fraud in obtaining it, the proof of the fraud must be clear, precise, and indubitable. Slight parol evidence is insufficient. Thus, it was held in a case where the plaintiff proposed to avoid a release executed by him by proof that he could neither read nor write, that he did not know the contents of the paper signed by him, that he understood it to be a receipt, and that he did not intend it to be a release, that this testimony was too slight to warrant the submission of the question of fraud to a jury. Railway v. Shay, 82 Pa. St., 203." Also see Glenn v. Statler, 42 Iowa, 107; 15 Am. and Eng. Encyc. of Law, 628.

It will be observed that this instrument is not simply an admission that Rand's prior possession had been as tenant of Pierson and Williams, but it was also an agreement to continue that relation in future. In order for him to avoid its effect, the charge should require him to show not only that he could not read, and did not in fact know its contents, but that it was misread to him, or some other fact that would excuse his negligence in signing an instrument the effect of which he did not understand. As we are not entirely agreed, we will express no opinion as to whether or not the evidence was sufficient to authorize the submission to the jury of the issue of the invalidity of this instrument, upon the ground of the intoxication of Rand at the time he signed it, but will call attention to the following authorities, as bearing upon the question, in order that the evidence may be more fully developed upon another trial: Railway v. Tierney, 72 Texas, 314; Reynolds v. Dechaums, 24 Texas, 175; Railway v. Evans, 71 Texas, 368.

As the giving of the foregoing charge will necessitate a reversal of the judgment, we will not attempt to discuss all the other assignments of error, but will content ourselves with indicating our views upon the questions of law suggested therein which are most likely to arise upon another trial.

If the instrument of date October 12, 1880, should not be found invalid upon any of the grounds upon which it is attacked by appellees, and was executed by Rand before the completion of the ten years' adverse possession, its effect would, of course, be to defeat a recovery by plaintiffs of any part of the land sued for. Their right is entirely dependent upon Rand's possession, which would thus be shown not to have been adverse for the requisite period. Eldridge v. Parish, 6 Texas Civ. App., 37, and cases there cited. If, however, the bar had in fact been completed at the time this instrument was executed, it would not convey the title which had thus been acquired, the property at that time being the homestead of Rand and his wife. If treated as a deed or relinquishment of title, it, having been executed by Rand alone, could not have the effect to convey his homestead, his wife being then alive; and if treated simply as an admission that his prior possession had not been adverse, this would not destroy the title already given by law, if in fact all its requirements had been fulfilled. Bruce v. Washington, 80 Texas, 368; Wood on Lim., 576. The instrument would, however, be admissible in evidence as against Rand himself, although executed after the expiration of the ten years, to be considered by the jury in connection with the other evidence in determining the real nature of his possession during the time relied upon to complete the bar. Church v. Burghardt, 8 Pick., 327; Cook v. Long, 27 Ga., 280; Long v. Young, 28 Ga., 130. There are also expressions in the cases last cited which might lead to the conclusion that an acknowledgment of this kind, although made after the completion of the bar, would have the effect of defeating a title thus acquired; but we think the authorities cited to sustain the opposite view are supported by the sounder reasons, when applied to the perfect title conferred by our statute.

The case seems to have been tried in the court below and is presented to us upon the presumption that Randall's title acquired by limitation must be sustained by evidence of actual inclosure by fence for the statutory period. If this be conceded to be true, under the facts as they really exist, we think mere temporary breaks in the inclosure, if enough of the fence remained to give notice of the extent of the adverse claim to the owner, would not stop the running of the statute. Gunter v. Meade, 78 Texas, 638, 639. We will add, however, that where one actually resides upon a large tract of land and claims it for ten years, under our statute, he acquires title to 160 acres, including his improvements, whether it be inclosed or not, unless there be something in the evidence to restrict him to a smaller area. Craig v. Cartwright, 65 Texas, 421; Pearson v. Boyd, 62 Texas, 541. This of course might be done by showing that the possessor himself so restricted his claim.

It might also be done by showing that the real owner had actual possession of a part of the tract, in which case his constructive possession would extend to all not in the actual occupancy of some one else. Evitts v. Roth, 61 Texas, 81; Claiborne v. Elkins, 79 Texas, 380. It may be that this can also be done by showing a division of the tract into lots, blocks, and streets by the real owner, and that the possessor's improvements only extended to one or more of the parcels thus defined. Evidence of this kind might materially aid in defining the boundaries of the possessor's claim, in the absence of actual inclosure. We will not, however, indicate any decisive views upon this phase of the case, as it seems clear from the evidence that when Rand first went into possession the survey was outside the city proper, and had not then been divided into town lots, and the record does not show when, how, nor by whom this was subsequently done. Some of the appellants claim that they purchased from the holder of the record title, without notice of appellee's claim, after the completion of the statutory bar and the destruction of the fence inclosing that part of the tract, and should therefore be protected as bona fide purchasers for value. At the time of this purchase, Rand was living in the house he had occupied while it is claimed the statute was running in his favor; and unless the part claimed by these appellants had been separated in some distinct way from the remainder of appellee's claim, we do not see why their actual possession did not operate as constructive notice. But conceding that the owner of the paper title had divided this land into lots and blocks, and that at the time of the purchase by these appellants, appellees had no improvements on the lots so attempted to be acquired, how would the law stand? Could the holder of the record title thus prejudice the rights of the holder of the legal title already acquired by limitation? Can A, for instance, by surveying into town lots the land of B, deprive the latter of the benefit of the constructive notice that would otherwise be given by his actual possession of a part of the tract? We think not. But suppose it should be made to appear that appellees themselves, after their title had been perfected under the statute, had divided this land into separate lots, or had recognized a plat made by the holders of the paper title, and appellants had purchased by this plat, who should prevail? It is conceded that a title acquired by limitation is not included within our registration statutes, and if appellants, as subsequent purchasers, are to prevail over appellees, it must be upon equitable grounds. It has sometimes, even in adjudicated cases, seemingly been taken for granted that the fact that one purchases and pays value, without notice of an older claim, entitles him to priority over it, even though the owner thereof may not have in any manner been at fault; but this view has not often obtained where the question has been directly presented, and it may now be stated to be the generally accepted rule that, where the equities of the parties are equal, the older or legal title is the better. In other words, in order to entitle a subsequent purchaser to prevail over a prior

owner, he must show the latter to have done or omitted something which makes it inequitable for him to interpose his otherwise superior title. Walters v. Jewett, 28 Texas, 192; 2 Pom. Eq. Jur., 735, et seq. We do not think the record as presented to us places appellees in this attitude, and we will not undertake to anticipate the facts as they may be presented upon another trial.

The judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*

Delivered February 27, 1895.