CHAPMAN et al. v. WEAVER.   (No. 6804.)†

(Court of Civil Appeals of Texas.   Galveston.
May 19, 1915.   Rehearing Denied
June 30, 1915.)

ADVERSE POSSESSION ⟨&⟩100—TITLE—SCOPE
OF POSSESSION.

Rev. St. 1911, art. 5676, declares that the ten years' adverse possession which ripens into title shall not embrace more than 160 acres, including the improvements, or the number of acres actually inclosed should it exceed 160 acres, but that when possession is under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceful possession shall be coextensive with the boundaries specified in the instrument.   Plaintiff, whose deed for 130 acres encroached on defendant's land, went into possession up to the boundaries of his deed, building some of his improvements on the land of defendant.   *Held* that, notwithstanding his peaceful adverse possession for over ten years, plaintiff could not claim a full 160 acres of land; his possession being limited to the land included in his deed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. ⟨&⟩ 100.]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by J. J. Weaver against J. R. Chapman and others.   From a judgment for plaintiff, defendants appeal.   Reversed and rendered.

Andrews, Streetman, Burns & Logue, of Houston, and Terry, Cavin & Mills, of Galveston, for appellants.   John B. Warren, of Houston, for appellee.

PLEASANTS, C. J.   This is an action of trespass to try title brought by appellee against the appellants, J. R. Chapman and the Kirby Lumber Company, to recover a tract of 160 acres of land, a part of the Henry Cochran original survey in Newton county, and to restrain the defendant Kirby Lumber Company from cutting and removing the timber from said land.   The defendant Chapman answered by general demurrer and plea of not guilty and by cross-bill which contains all of the necessary allegations of a petition in trespass to try title against the plaintiff to a tract of 1,536 acres on the Henry Cochran survey, being the north two-thirds of the east half of said survey and fully described in said cross-bill.   The defendant Kirby Lumber Company answered

by general demurrer, general denial, and plea of not guilty.   The cause was submitted to a jury in the court below upon special issues, and upon the verdict returned by the jury judgment was rendered in favor of the plaintiff for 160 acres of land on the Cochran survey to be surveyed so as to include all of plaintiff's improvements on said survey, and in favor of the defendant Chapman for all of the remainder of the land in controversy.   Judgment was also rendered perpetuating the temporary injunction theretofore granted restraining the defendant Kirby Lumber Company from cutting and removing the timber from the 160 acres adjudged to plaintiff.

The only title attempted to be established by plaintiff was a limitation title under the ten-year statute.

The evidence shows that the Cochran survey adjoins the Stephen H. Everett league survey, the south boundary line of the Everett being the north boundary line of the Cochran.   The defendants contended, and introduced evidence sufficient to sustain their contention, that this boundary line was located some distance south of the place which appellee contended was its true location.   The correct location of this line was the first issue submitted to the jury, and the verdict fixed its location as claimed by plaintiff.

The evidence shows that in July, 1891, plaintiff and E. C. Brandon purchased from J. B. Scott et al. a tract of 130 acres of land described as follows:

"A part of the S. H. Everett headright and part of a tract of land deeded by A. J. McKinnon and wife to S. H. Scott, on the 4th day of October, A. D. 1879, and deeded by S. R. Scott to Mrs. Hester Ann Scott on the 12th day of January, 1885, and more particularly described as follows, to wit: Beginning at the S. E. corner of said Everett league a stake from which a sweet gum bears N. 68 deg. W. and a red oak brs. N. 30 deg. W.   Thence N. 72 deg. W. with the S. line of a tract of land deeded by A. J. McKinnon to A. J. Rodgers at 1,020 vrs. Rodgers S. W. corner in a slough from which a black gum 30 inches in diameter bears S. 81 deg. E. 7 varas and a red oak brs. N. 72 deg. W. 6 vrs.   Thence down said slough with its meanders to the point where said slough is crossed by the south boundary of said Everett league.   Thence N. 60 deg. E. with said league line to the place of beginning, containing one hundred and thirty acres of land, more or less."

In November, 1891, Brandon conveyed his interest in said 130 acres to plaintiff.   Both of these deeds were duly recorded shortly after their execution.

In answer to a question submitted by the charge, the jury found that the south line of this 130-acre tract as actually surveyed and located on the ground was the line claimed by defendant as the south boundary line of the Everett league.   This finding is supported by the great preponderance of the evidence, if not by the undisputed evidence. Plaintiff testified that he had a house built on this 130 acres in the fall of 1893 and went there to live in January, 1894.   He supposed

---

when he had the house built that it was on the Everett league. After he moved on the place, he built a barn, some stables, and a shed. He has an inclosure of about three acres around his improvements, a portion of which is cultivated. He also has a field of about 35 acres some distance west of his home. This field lies mostly north of the south line of the Everett as fixed by the verdict of the jury, but it and all of the plaintiff's improvements which have been on the place for ten years prior to the date of the filing of this suit, except one corner of the gallery of his dwelling house and possibly a small triangular piece of ground within his inclosure not exceeding one-half acre, are on the 130-acre tract. His field and garden and all other improvements which have been on the land for as long as ten years prior to the filing of the suit are north of the south line of the 130-acre tract. Shortly after plaintiff moved on the place, he learned that the south line of his 130 acres, as actually marked and located on the ground, was not the south line of the Everett as stated in his deed and that his dwelling house, outhouses, and a portion of his inclosed land were on the Cochran survey. The undisputed evidence shows that, after he made this discovery, he did not make any change in his inclosures or the character and extent of his actual occupancy and possession until less than ten years before this suit was brought.

Questions 4 and 5 submitted to the jury by the charge of the court were as follows:

"Question No. 4. Did the plaintiff, J. J. Weaver, at any time prior to the 15th day of May, A. D. 1903, and after he discovered that the Joe McDonald line was the true south boundary line of the Stephen H. Everett league (if he did discover that the Joe McDonald line was the true south boundary line of the Stephen H. Everett league), do anything that would lead or cause the true owner of the land to discover that inward intention of him, the said J. J. Weaver, to claim 160 acres of the Henry Cochran league? Answer this question 'yes' or 'no.' If you answer question No. 4 'yes,' then answer question No. 5, but if you answer question No. 4 'no,' then you need not answer question No. 5.

"Question No. 5. What did the plaintiff, J. J. Weaver, do that would lead or cause the true owner of the land to discover that inward intention of the plaintiff, J. J. Weaver, to claim 160 acres of the Henry Cochran league? Answer this question in your own words, and answer fully."

To question 4, the jury answered, "Yes"; and to question 5, "Lived on and cultivated." We think it clear that the answers of the jury to these questions were not intended by them, and cannot be regarded as, a finding that there was any change in plaintiff's actual possession and occupancy prior to May 15, 1903, which date was just ten years prior to the filing of this suit; and, as before stated, the undisputed evidence shows that no such change was made.

We are of opinion that, upon the findings of the jury and the undisputed evidence, judgment should have been rendered in favor of defendant Chapman for all of the land claimed by him, except that portion included within the boundaries of the 130-acre tract described in plaintiff's deed, and appellants' assignments of error complaining of the refusal of the court to instruct the jury to return a verdict in favor of defendants except as to that portion of the land embraced within the boundaries of the 130-acre tract must be sustained. When one enters upon the land of another under a deed which he places of record, he cannot obtain title by limitation to any portion of the land not embraced within the boundaries of his deed and of which he is not in actual possession.

Under the ten-year statute of limitation, only 160 acres of land can be acquired unless the claimant has actual possession of a larger quantity; but, when such possession is taken and held under a deed or other recorded memorandum of title, the possession "shall be construed to be coextensive with the boundaries specified in such instrument." Article 5676, Revised Statutes 1911. To construe this statute as extending but not restricting the claimant's right to the land embraced within the boundaries of his deed is to give the word "coextensive" a meaning different from its ordinary one. If one finds a trespasser in possession of his land, he must take notice that such possession, if allowed to continue for a period of ten years, may ripen into title to 160 acres, and, if the trespasser has a larger quantity inclosed, to all of the land so inclosed. If such possession is taken and held under a deed, the owner must take notice that it will be extended by construction to the boundaries defined by the deed, and he may also rely upon the assumption that one in possession under a recorded deed is not claiming land not embraced in his deed and not in his actual possession. In the case of Hitchler v. Scanlan, 83 Tex. 573, 19 S. W. 261, our Supreme Court, in speaking of the extent of the possession of claimant under the ten-year statute, say:

"His constructive possession could not be extended beyond the boundaries given in his deeds, if he had deeds during such possession, or beyond the boundaries of the deeds of other persons for whom he was holding in case he was so holding possession. Pearson v. Boyd, 62 Tex. 541."

In the case of Porter v. Miller, 76 Tex. 597, 13 S. W. 555, 14 S. W. 334, the general rule that constructive possession of land cannot be extended beyond the boundaries defined in the deed under which the possessor claims is announced and applied to a claim under the ten years' statute of limitation.

In Frazer v. Seureau, 128 S. W. 651, Judge Neill announces the rule as follows:

"Where one or his tenant actually resides upon a large tract of land and claims it for 10 years, he acquires title to 160 acres, including his improvements, whether it is inclosed or not, unless there be something in the evidence to restrict him to a smaller area. Craig v. Cartwright, 65 Tex. 421; Pearson v. Boyd, 62 Tex. 541; Williams v. Rand, 9 Tex. Civ. App. 636, 30 S. W. 509; Simpson Bank v. Smith [52 Tex.

Civ. App. 349], 114 S. W. 446; Harris v. Iglehart [52 Tex. Civ. App. 6], 113 S. W. 170. In a case like this, where there is possession under a deed, it is limited to the land described therein, but it extends to the limit of its boundaries."

See, to the same effect, Williams v. Rand, 9 Tex. Civ. App. 636, 30 S. W. 509, Blaske v. Settegast, 123 S. W. 221, and Noland v. Weems, 141 S. W. 1031.

We think the authorities above cited fully sustain appellants' contention that under the undisputed evidence appellee was only entitled to recover that portion of the land in controversy embraced within the boundaries defined in his deed. It follows that the judgment of the court below should be reversed, and judgment here rendered restricting appellee's recovery as above indicated, and it has been so ordered.

Reversed and rendered.