GLOBE FIRE INS. CO. v. LIMBURGER et al. (No. 5759.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 14, 1917. Rehearing Denied March 21, 1917.)

1. INSURANCE ☞232—CANCELLATION—RETURN OF PREMIUM.

Whether insured canceled his policy is not dependent upon the insurer's agent canceling a premium charge where insured trusted such agent, who also handled his real estate business, to do so.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 504.]

2. INSURANCE ☞229(1) — CANCELLATION — WAIVER OF NOTICE.

Where insured signed a cancellation of the policy, he waived a provision allowing five days' notice of cancellation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 501.]

3. INSURANCE ☞232—PREMIUM—CHARGE—CANCELLATION.

Cancellation of a premium charge against insured by the insurer's agent does not affect insured's legal rights when made without his knowledge or consent.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 504.]

4. INSURANCE ☞233 — POLICY — CANCELLATION—VALIDITY.

That insured did not understand he was signing a cancellation of his policy, and did not know the insurer's agent had been instructed to obtain such cancellation, is insufficient to invalidate the cancellation; no fraud being shown.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 505.]

5. INSURANCE ☞235 — POLICY — CANCELLATION—FRAUD—SUFFICIENCY OF EVIDENCE.

Evidence that insured did not know what he was signing is insufficient to justify setting aside his written cancellation of a policy because of fraud.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 507.]

6. INSURANCE ☞235—CANCELLATION—NOTICE TO AGENT.

Evidence that insurer's agent also handled insured's fire insurance business for a long period is insufficient to establish an agency to receive notices of cancellation, where such notices had always been given directly to insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 507.]

7. APPEAL AND ERROR ☞1175(5)—DETERMINATION—ENTRY OF JUDGMENT.

Where appellant insurance company proved a cancellation of the policy sued upon, appellee failing to establish grounds for setting it aside and there being nothing to suggest his testimony would be different, judgment will be entered for appellant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4579.]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Henry Limburger, Sr., and others against the Globe Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment entered for defendant.

Henry C. King, Jr., M. L. Roark, and Lewright & Douglas, all of San Antonio, for appellant. Irvin R. Stone and Scott & Dodson, all of San Antonio, for appellees.

MOURSUND, J. W. A. Wurzbach sued the Globe Fire Insurance Company on a $1,500 fire insurance policy issued by said company, through W. S. Conness, as its agent, to Henry Limburger, Sr., dated May 29, 1913, for the term of one year. Wurzbach's suit was founded upon a loss payable clause, attached by Conness on September 24, 1913. The property was destroyed by fire on January 10, 1914. The insurance company pleaded a general denial; want of consideration to support a recovery on the policy, contending that no premium had ever been paid thereon; that if any premium had been paid, it was returned on June 16, 1913; that immediately upon receipt of advice that the policy had been issued defendant instructed its agent, Conness, to cancel the same; that under date of June 16, 1913, Henry Limburger, Sr., executed and delivered to Conness, as agent, what is known as a lost policy receipt or voucher, reciting that said policy was lost or mislaid, for which reason it could not then be surrendered, and that said Limburger thereby released all of his right and interest in said policy, and agreed to make no claim for loss or damage for which defendant might otherwise be liable under the terms of the policy; that Conness was negligent in failing to cancel said policy, if in fact he did not do so, when instructed as aforesaid, and in attach-

ing said loss payable clause to said policy, and because of such negligence he is liable to his principal, defendant insurance company, for any recovery which may be had against such company. The insurance company impleaded Limburger and Conness, and asked judgment over against them for any sum that might be recovered against it, and in the alternative against Limburger for $50.-40, the alleged unpaid premium on the policy. Conness answered by plea of misjoinder of parties defendant and causes of action. Limburger adopted the allegations of the second amended petition of plaintiff and further answered as follows: General denial; denial that he signed the lost policy receipt; plea that if he did sign it, such receipt is void because there was no consideration therefor; allegation that he never knowingly signed such a receipt; plea that five days' notice of cancellation of policy was not given him; plea that insurance company is estopped to deny that the policy was in full force by reason of the fact that it knew that on September 27, 1913, Conness, Wurzbach, and Limburger were treating such policy as if it were in full force. Limburger also pleaded misjoinder of parties and causes of action. The insurance company, answering Limburger, alleged that no premium was ever at any time paid by Limburger. The case was submitted on special issues, in answer to which the jury found, in effect, as follows: (1) That Limburger did not know and understand, when he signed the lost policy receipt dated June 16, 1913, that its purpose and effect was to acknowledge cancellation of the policy; (2) that Limburger did not know of the insurance company's instructions to cancel the policy, (3) that at the time the loss payable clause with the typewritten signature of Conness as agent was indorsed upon the policy and the policy delivered to Wurzbach, Conness did not have the authority of the Globe Fire Insurance Company to so indorse and deliver said policy or cause it to be so indorsed and delivered; (4) that at the time the loss payable clause with the typewritten signature of Conness, as agent, was indorsed upon the policy and the policy delivered to Wurzbach, Miss Eckles and Mrs. Matthews did not have the authority of the Globe Fire Insurance Company and of Conness so to indorse said policy or cause it to be so indorsed; (5) that after the Globe Fire Insurance Company was notified that the loss payable clause had been placed upon the policy and the policy delivered to Wurzbach, said insurance company did not acquiesce in and ratify said acts. Judgment was rendered sustaining exceptions and pleas urging misjoinder of parties and causes of action in so far as Conness was concerned, and the insurance company's suit dismissed as to Conness, without prejudice. It was adjudged, upon the verdict, that Wurzbach take nothing against the insurance company; that Limburger recover of the insurance company $1,-682 with interest at the rate of 6 per cent. from January 18, 1916. The insurance company appealed.

Appellant's first and second assignments of error read as follows:

"First. The court erred in rendering judgment herein in favor of defendant Limburger, because it appears from the undisputed proof in this case that on June 16, 1913, said Limburger signed a written contract called a 'lost policy receipt,' by the terms and effect of which he warranted that the policy of insurance involved herein had been lost or mislaid by him; that he would return said written instrument for cancellation, if he should ever find same, and, further, that he did then and there relinquish and waive any and all rights, claims, and demands as against this defendant, under and by virtue of said original policy of insurance; this so-called lost policy receipt constituting a contract between this defendant and said Limburger, which was amply supported by a valuable consideration, and which cannot be legally set aside at the instance of said Limburger, save and except by proper pleading and proof that he was induced through fraud, accident, or mutual mistake of parties to execute said contract of June 16, 1913; moreover, there is no finding of the jury to the effect that said Limburger was induced by reason of fraud, accident, or mistake to execute said contract of June 16, 1913.

"Second. The court erred in rendering judgment herein in favor of defendant Limburger, because it appears from the undisputed proof in this cause that by reason of his execution of the so-called lost policy receipt of date June 16, 1913, he estopped himself to assert as against this defendant any right or cause of action based upon the original policy of insurance involved herein. He was and is thus estopped by reason of his execution of said lost policy receipt, wholly independent of the question of whether or not same constituted a binding contract between himself and this defendant."

The lost policy receipt, dated June 16, 1913, was in fact a release of the insurance company from any liability under the policy; and, while in his pleading Limburger denied executing the same, his attorneys in open court admitted his signature thereto. The only pleading in which Limburger attempted to attack the validity of such release if it should be found that he signed it was as follows:

"Further pleading to said paragraph, in the alternative, this defendant affirmatively avers that at the time it is alleged that such receipt was signed this defendant was about 74 years old; that he was and is now unable to read and write the English language; that in signing any instrument of writing in the English language he of necessity relied upon the representations of some other person as to the contents, purpose, and effect thereof; that if any such receipt was ever signed by this defendant, it was so done at the instance of some person acting in behalf of the Globe Fire Insurance Company, and such person, if any, is to this defendant unknown, and that all said facts were to such person well known; that no such person ever presented to this defendant for his signature any such instrument, advising him that the same contained any provision as pleaded in said paragraph, and this defendant never executed any instrument with such knowledge. Wherefore, in event said defendant now has in its possession any such instrument as by it pleaded, because of the facts herein set forth, defendant says that he is entitled to have the same canceled and be relieved therefrom."

This plea, when considered in connection with Limburger's denial of having signed the instrument, indicates that he had no recollection of any such transaction, and therefore was unable to allege any specific acts of concealment or misrepresentation; not recollecting how he came to sign it, he naturally would not be able to allege what induced him to sign it, or what character of instrument he thought he was signing. We do not consider such allegation as sufficient to show that he signed the instrument on account of such fraud or mistake as would be sufficient in law to cancel the same. Nor does his testimony show any such fraud or mistake. He said:

"I cannot swear if I ever signed this lost policy receipt; it is too long a time. I cannot swear I never signed any receipt to Mr. Conness acknowledging that the insurance on my Austin street property was canceled, knowing what I was signing."

In answer to a question by the court whether before the fire took place he knew in any manner that the policy had been canceled, he replied:

"No, sir; no. I paid my money in advance."

On cross-examination, after his counsel had admitted his signature to the instrument, he said:

"I don't know why I signed this receipt at the time I signed it; because I can't read. I don't know what this paper is (lost policy receipt)."

He did not know whether he went to Conness' office during the month of June, 1913. Conness testified that in May, 1913, he issued three other policies on this same property, all of which were promptly canceled by the companies, and great difficulty was experienced by him in getting Limburger to bring in the policies; that when the appellant notified him to cancel the policy involved in this suit he sent a boy for several days to find Limburger, but he was not at home, so finally he wrote a note to Limburger and instructed that it be put under Limburger's door; that Limburger came to Conness' office the next day, and Conness explained that the company had canceled the policy, and it had to be returned; that Limburger said he had lost the policy; that then Conness told him he would have to have the policy or a lost policy voucher signed and returned to the company; that he had Mrs. McCormick, who worked for him at that time, to hand him such a voucher, which he read to Limburger, and Limburger signed it. Mrs. McCormick corroborated Conness in all respects concerning the above testimony, except that she was not sure that Conness read the lost policy receipt to Limburger, but was positive that the matter was fully explained to him.

[1-3] This testimony, as we view it, relates to the vital issue in the case. Much has been said about payment of premium, but there is no doubt, from the evidence, that the insurance company trusted Conness for the premium and accepted his obligation to pay it. In fact, it was admitted by the insurance company in open court that the policy was in force until June 16, 1913, when Limburger signed the lost policy receipt. Conness, who unknown to the insurance company was Limburger's agent for the collection of rents on his property and also to procure insurance thereon, trusted Limburger for the premium, agreeing to charge it to him and pay it to the company out of money collected for Limburger. Now, the evidence conclusively shows that a tentative charge of the premium was made by Conness against Limburger, but before entry thereof in the books it was canceled when the lost policy receipt was signed, and no such charge appeared in several statements furnished Limburger by Conness prior to the fire. Limburger cannot contend that the insurance company is responsible for any debt that Conness might owe Limburger which did not arise from the payment of premium, and when the charge for premium was canceled the premium must be held to have been repaid. In addition, if Limburger made a contract canceling the policy and releasing the company from obligations, it is clear that he trusted his agent to credit him with the amount of premium, and, had the agent failed to do so and kept out said amount of money accruing to Limburger for rents, Limburger could not be heard to say that in so doing Conness was the agent of the company, and not his agent. If Limburger contracted to release the company from liability, thereby he accepted notice and waived the five days allowed in the policy between notice and cancellation, and as he could waive the immediate repayment of premium even if it had been paid to the company, he could not be heard to say, under the facts of this case, that he was entitled to cancellation of the charge against him by his agent as a prerequisite to the taking effect of the release of the policy. Polemanakos v. Austin Fire Ins. Co., 160 S. W. 1134; Westchester Ins. Co. v. McMinn, 188 S. W. 25. On the other hand, the company could not defend on the theory that Conness canceled the charge against Limburger prior to the fire, and that thereby the premium was returned, and no consideration existed for the policy, for if no notice was given Limburger of the cancellation of the policy, the repayment of premium by canceling the charge against him, made without his knowledge or consent, could have no effect on his legal rights. We, therefore, consider that the crucial issue in the case is whether the contract of cancellation and release pleaded by the company and admitted to have been executed by Limburger is shown to have been executed under such circumstances as not to be binding on Limburger.

[4, 5] The jury found that Limburger did not know and understand when he signed the receipt that its purpose and effect was to acknowledge cancellation of the policy. They also found that he did not know of the

insurance company's instructions to cancel the policy. Are these findings sufficient to justify the court in setting aside the so-called receipt which in fact is a contract releasing the company from liability, in effect a contract canceling the policy? If this contract is not set aside, it is useless to talk about notice of cancellation of the policy, for the contract itself provides for cancellation, and Limburger is bound by its legal effect unless reasons exist why it should be set aside and held for naught.

The findings of the jury above set out are, in effect, simply a finding that Limburger did not know the contents of the instrument signed by him. That fact alone would not be sufficient to set aside and cancel the instrument. No issue of fraud or mistake was submitted to the jury, but if there had been any sufficient plea to that effect, could we find from the evidence in support of the judgment that the trial court was justified in making a finding of fraud or mistake? We think not. In the case of Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 510, we find the following quoted:

"To overturn a written release because of fraud in obtaining it, the proof of the fraud must be clear, precise, and indubitable. Slight parol evidence is insufficient. Thus it was held in a case where the plaintiff proposed to avoid a release executed by him by proof that he could neither read nor write; that he did not know the contents of the paper signed by him; that he understood it to be a receipt, and that he did not intend it to be a release; that this testimony was too slight to warrant the submission of the question of fraud to a jury. Railroad Co. v. Shay, 82 Pa. 203."

In the case of Chicago, R. I. & T. Ry. Co. v. Williams, 37 Tex. Civ. App. 198, 83 S. W. 248, the court said:

"This, of course, is tantamount to a direction that the appellee can recover in the event the jury find and believe from a preponderance of the evidence that he did not know and understand the nature and effect of the instrument at the time he signed and delivered it, and that such want of knowledge was not caused by his negligence. This is not sufficient to authorize him to recover. Before he would be authorized to recover in this case, the appellee will be required to show, not only that he was ignorant of the true nature and effect of the release executed by him, but that his want of knowledge in these respects was procured or induced by some act of the appellant amounting to fraud. It is undisputed that appellee was able to read, and could have read the instrument executed by him, and his failure to do so can only be excused by a replication of fraud upon the part of the company's representative. The principle is illustrated in the language of Mr. Justice Head in Williams v. Rand [9 Tex. Civ. App. 631] 30 S. W. 511; 'In order for him to avoid its effect, the charge should require him to show, not only that he could not read, and did not, in fact, know its contents, but that it was misread to him, or some other fact that would excuse his negligence in signing an instrument, the effect of which he did not understand.'"

See, also, M., K. & T. Ry. v. Craig, 44 Tex. Civ. App. 583, 98 S. W. 907.

As Limburger has evidently no recollection of the matter, his testimony does not show any fraud or misrepresentation, or such a mistake as would excuse him, if mistake had been pleaded. In his brief he says that his testimony, to the effect that no explanation was made to him, conflicts with that of Conness and Mrs. McCormick. It is then attempted, in a mild way, to infer that imposition must necessarily have been practiced on the theory that, taking Limburger's testimony as true, he was not told that it was a lost policy receipt, and therefore he must have been told that it was some other kind of instrument. He has no recollection of signing the instrument, yet undertakes to be positive about what occurred and what did not occur when he signed it. No motive existed for Conness to practice a fraud on him. The company had the absolute right to cancel as provided in the policy. Limburger's theory that a fraud was practiced on him, it seems to us, is based on his belief that he would have procured, or attempted to procure, other insurance had he been informed of the cancellation. It appears that Conness had tried thrice before this to place the risk with companies he represented, and all had promptly canceled. Limburger denied knowledge of these facts, but at any rate it is clear that he relied on Conness to keep up his insurance for him, and not on himself. It may be that Conness was negligent as his agent in not making further efforts to get insurance, but as agent of the Globe Fire Insurance Company he has no duty to perform with reference to placing the insurance in another company, and that company is not responsible because of such failure. The charge of fraud rests upon too slender a thread to meet the rule laid down in the case of Williams v. Rand, supra. We conclude that the testimony does not authorize a finding by the court of fraud to supplement the findings of the jury, and that the judgment should be reversed. The first, fourth, fifth, and seventh assignments of error are sustained.

[6] It is also contended that the evidence conclusively showed an agency on the part of Conness to attend to all of Limburger's fire insurance business, and that therefore notice to Conness of the cancellation was notice to Limburger. Limburger testified that Conness handled all of his fire insurance during a period of about 20 years. This testimony does not show general authority to represent Limburger in all matters relating to his insurance. It merely shows that he placed all his insurance with Conness during that period, and, in connection with other testimony, would support a finding that Conness during such period was his agent to procure insurance on his property, but the testimony does not show that Conness was his agent to receive notice of cancellations. The dealings of the parties tend to show that his authority did not extend that far, for notice of cancellations were invariably given Limburger. Insurance Co. v. Blum, 76 Tex. 653, 13 S. W. 572; Insurance Co. v.

Dalton, 175 S. W. 459; British-American Assurance Co. v. Cooper, 26 Colo. 452, 58 Pac. 592. For annotations on this subject, see note to 38 L. R. A. (N. S.) 623.

[7] As the insurance company pleaded and proved a contract canceling and releasing the insurance policy sued upon, and appellee Limburger wholly failed to show any ground for setting aside and annulling such contract of cancellation and release, and there is nothing to suggest that his testimony upon which his contentions must rest would be other or different upon another trial than that given, we do not feel justified in remanding the case. We, therefore, reverse the judgment in so far as it awards appellee Limburger a recovery against appellant, and render judgment that he take nothing by his suit against the insurance company. In all other respects, the judgment will not be disturbed.