**TEMPLE LUMBER CO. et al. v. McFARLAND et al. (No. 1041.)**

(Court of Civil Appeals of Texas. Beaumont. April 18, 1924. Rehearing Denied July 7, 1924.)

**1. Deeds ☞207—Execution proved by circumstances alone.**

Execution of a deed may be proved by circumstances alone.

**2. Trial ☞350(1)—Issue held not to be on weight of evidence.**

Where, in trespass to try title, plaintiffs claimed under deed executed by B., the common source of title, to A., submitted issue, "Did B. execute a deed conveying the land * * * to A.?" held not on weight of evidence.

**3. Trial ☞350(1)—Issue as to execution of deed not erroneous as failing to confine to deed of certain date.**

Where, in trespass to try title, plaintiffs claimed under deed executed by B., the common source of title, to A., submitted issue, "Did B. execute a deed conveying the land * * * to A.?" held not erroneous as failing to confine the jury to consideration of a deed of a certain date many years past, where there was no question that, if such deed was ever executed, it was many years prior to defendants' purchase of any of the land from any of the heirs of B.

**4. Vendor and purchaser ☞242—Burden of proving innocent purchaser for value held to be on claimant.**

In trespass to try title, where evidence showed that conveyance under which plaintiffs claimed was prior to defendants' purchase, burden of proving that they were innocent purchasers for value rested on defendants.

**5. Trial ☞352(4)—Refusal to submit unsupported special issue held without error.**

Where, in trespass to try title, there was no evidence to support defendant's requested issue as to whether it purchased land in good faith for valuable consideration without actual notice of any fact that would affect its purchase, there was no error in refusing its submission.

**6. Adverse possession ☞114(1) — Evidence held to support title under ten-year limitation.**

In trespass to try title, evidence held to support title under ten-year limitation.

**7. Adverse possession ☞100(1)—Possession of tract deemed coextensive with boundaries of muniments of title.**

Where one in possession of land, using or enjoying it either in person or by tenant, and claiming it under deed or other written muniments describing whole tract, his possession will be deemed coextensive with boundaries stated therein, and he will acquire perfect title to land so claimed and defined under ten-year statute (Rev. St. art. 5676), if such possession, use, and enjoyment continues for required period.

**8. Adverse possession ☞115(5)—Controverted issue held for jury.**

Where claimant under ten-year statute (Rev. St. art. 5676) denied that he had agreed to hold possession under defendant, it raised question of fact for jury.

**9. Trial ☞194(10), 240—Charge held argumentative and on weight of evidence.**

Where plaintiff claimed under ten-year statute, defendants' requested charge that an encroachment which does not appropriate some substantial portion of land sufficient in extent to give notice to owner of adverse claim to his land by trespasser will not support plea of limitations was argumentative and on weight of evidence.

**10. Adverse possession ☞13 — Possession must be actual, visible, notorious, distinct, and hostile.**

Peaceable and adverse possession of land contemplated by law must be actual, continued, visible, notorious, distinct, and hostile and sufficient to charge owner with notice of substantial appropriation of land in question.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Trespass to try title by L. P. McFarland and others against the Temple Lumber Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Goodrich, Davis & McWilliams, of Hemphill, for appellants.

───────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Kennerly, Williams, Lee & Hill, of Houston, and James G. Barker, of Hemphill, for appellees.

HIGHTOWER, C. J. This was an action in trespass to try title, filed in the district court of Sabine county by the appellees as plaintiffs against the appellants as defendants, and involves a tract of 320 acres of land in that county that was patented to David Blackman December 10, 1849, and commonly known throughout the county as the "lower" Blackman survey. There were two surveys patented to David Blackman in Sabine county, and they are almost contiguous at one point; the one not here involved being commonly known in the county as the "upper" Blackman survey.

In addition to the formal action of trespass to try title both parties pleaded title under the three, five, and ten year statutes of limitation.

The appellees, other than McFarland, are the heirs of Norris Austin and his wife, Emma Austin. Norris Austin died in 1868, and Emma Austin in 1888. Appellees' title is based upon a claimed deed from David Blackman, the patentee, to Norris Austin, the execution of which they sought to prove by both positive and circumstantial evidence. The appellants, Temple Lumber Company and Judge W. F. Goodrich, assert title through purchases by the latter from the heirs of David Blackman, and contended in the trial court that no deed was ever executed by David Blackman to Norris Austin conveying this land. They further contended that, even though such deed was executed, nevertheless, Judge Goodrich, at the date of his several purchases from the heirs of David Blackman, as shown by the record, had no notice, either actual or constructive, of the execution of such deed or of the assertion of title to the land by the Austin heirs, the appellees, and that appellants were innocent purchasers for valuable consideration, and were entitled to be protected as such in this action.

The case was tried with a jury, and was submitted upon two special issues, as follows:

Issue No. 1: "Did David Blackman execute a deed conveying the land in controversy to Norris Austin? Answer 'Yes' or 'No' as you may find the fact to be."

To this issue the jury answered, "Yes."

Issue No. 2: "Did plaintiffs, either in person or by tenant, have ten years peaceable and adverse possession of the tract of land in controversy, or any part thereof, prior to the institution of this suit? Answer 'Yes' or 'No' as you may find the fact to be."

To this issue the jury answered, "Yes."

Thereafter, upon motion therefor, judgment was rendered upon the verdict in favor of the plaintiffs for the land in controversy, as prayed by them, and defendants have duly prosecuted this appeal.

[1] Appellants have made no contention by assignment of error that the jury's answer to the first issue is not supported by the evidence, and such a contention could not be successfully made for the evidence is practically undisputed, as we think, on that issue, and shows overwhelmingly that David Blackman did, by deed, convey the land in controversy to Norris Austin. That the execution of a deed may be proved by circumstances alone is now settled beyond controversy by the authorities of this state. Frugia v. Truehart, 48 Tex. Civ. App. 513, 106 S. W. 736; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W 1016; Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Garner v. Lasker, 71 Tex. 435, 9 S. W. 332; McGee v. Paul, 110. Tex. 470, 221 S. W. 257; Humphreys v. Green (Tex. Civ. App.) 234 S. W. 562. In this case, however, the claimed deed from Blackman to Austin was sufficiently proved both by positive and circumstantial evidence.

[2] But, while appellants have not, by any assignment of error, questioned the sufficiency of the evidence to support the jury's answer to the first issue, they did object, in due time, to the form of the issue as submitted by the court, upon two grounds: First, that the issue as framed was upon the weight of the evidence; and, second, that the issue should have been so framed as to confine the jury to a consideration of a deed dated November 6, 1854.

[3] As to the first objection to the form of the issue we are wholly unable to see that it was upon the weight of the evidence, and therefore overrule appellants' contention on that point. As to the second objection we are also unable to agree with appellants. It is true, as argued by appellants, that the evidence bearing upon the execution of the claimed deed from David Blackman to Norris Austin tended strongly to show that such deed was executed in the year 1854, or about that time, and in an interrogatory propounded by appellees to one of their witnesses, who swore that he once saw the deed, the witness was asked about a deed dated November 6, 1854, but the witness did not testify as to the date of the deed. The date of the deed from David Blackman to Norris Austin was not a material inquiry in this case, but rather the factum probandum in that connection was the execution of the deed. If the claimed deed was ever, in fact, executed, it was many years prior to appellants' purchase of any part of the land from any of the David Blackman heirs, which is the only source of title asserted by appellants.

What we have said in this connection will also dispose of appellants' contention that the trial court committed error in refusing to submit their special issue No. 3, the form of

which was such as to require the jury to answer whether or not the deed from David Blackman to Norris Austin, if there was one, was dated November 6, 1854. Appellants advance the argument in their brief that the appellees' claim of a deed from David Blackman to Norris Austin was, by all the evidence bearing upon the issue, anchored and tied to a deed of specific date of November 6, 1854, and that there was no evidence on the execution of such deed at any other date, and that, therefore, the jury should have been confined in their consideration of the issue to such specific date. No witness stated that the claimed deed bore date of November 6, 1854, and while, as we stated, a deed of that specific date was inquired about in an interrogatory propounded by appellees to one of their witnesses, the witness did not undertake to give the date of the deed, nor did appellants confine themselves, so far as reflected by this record, to a deed from Blackman to Austin of any specific date, and they should not have been so confined in the presentation of the issue to the jury.

But it is further argued by the able and energetic counsel for appellants that the rule announced in Railway Company v. Rogers, 91 Tex. 52, 40 S. W. 956; Railway Company v. McGlamory, 89 Tex. 639, 36 S. W. 1058; Railway Company v. Hall, 98 Tex. 480, 85 S. W. 786, and other cases cited by them, has application here and supports their contention that the jury in their consideration of the question as to whether David Blackman executed a deed to Norris Austin should have been confined to the specific deed of date November 6, 1854. The rule announced in the cited cases, as we understand it, briefly stated, is that, where a defendant pleads and brings evidence to prove a certain group of facts which, in law, constitute a defense to the plaintiff's cause of action against him, it is his right, if he requests it, to have such facts grouped in a charge to the jury. The rule was first announced in cases where a general charge was given, but it has been held by our Supreme Court, in a comparatively recent opinion, that the rule also applies where a case is submitted upon special issues. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517. This court not long since had occasion to discuss the rule contended for in the case of Anderson Bros. v. Parker Construction Co. (Tex. Civ. App.) 254 S. W. 662, and no useful purpose would be served by a further discussion of that rule at this time. Suffice to say that we are unable to see that the rule invoked has any application to the special issue now under consideration; the date of the deed not being an ultimate fact which would control the judgment on the issue of its execution, under the state of the evidence as found in this record. The assignment must be overruled.

[4] The jury having found that David Blackman conveyed the land in controversy to Norris Austin, and the evidence showing beyond all doubt that such conveyance was long prior to any purchase by appellants from any of the Blackman heirs, appellees were entitled to judgment for all the land sued for by them, regardless of their title by adverse possession, unless appellants showed that they were innocent purchasers for value, and as to that issue the burden of proof rested upon appellants.

[5] The record shows that Judge W. F. Goodrich, through whom the other appellant claims, made his first purchase of a very small and indefinite portion of the land from one of the heirs of David Blackman on the 23d day of August, 1899, and that he made two other purchases of small and uncertain interests during that same year; and we think and hold that the evidence is sufficient to warrant a finding that Judge Goodrich paid a valuable consideration for these small purchases; but we have doubts whether the evidence as a whole was sufficient to warrant a finding by the jury, had such finding been requested by a properly framed issue, that at the date of these small purchases Judge Goodrich was not aware that the heirs or Norris Austin, the appellees here, were claiming and asserting title to all the land in controversy. Judge Goodrich's evidence, which is all the record reflects on the point, is very indefinite as to when he first learned of the claim and assertion of title by the Austin heirs. It is very clear and certain, however, that at the different dates when the great bulk of the tracts in controversy was purchased by Judge Goodrich he had notice of the assertion of title by the Austin heirs. Now, with the evidence in such shape, appellants requested, and the court refused, this special issue:

"Did W. F. Goodrich purchase the land in good faith for a valuable consideration paid, without actual notice of any fact that would affect his purchase? You will answer this question 'Yes' or 'No,' as you may determine from the evidence."

In connection with the requested issue the court was also requested to give this special instruction:

"In this connection you are instructed that 'actual notice' in law means when the party sought to be affected by it knows of the particular fact, or has knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the fact with the effect of which he is sought to be charged."

Manifestly, the question presenting this special issue to the jury called for an answer as to whether Judge Goodrich was a purchaser of all the land in controversy, without notice of the assertion of title by the Austin heirs; whereas, the evidence would have warranted, if at all, only a finding that Judge Goodrich was without notice when he made the three small purchases

some time in 1899. But the question was not so framed as to elicit an answer from the jury touching those purchases, and therefore there was no basis in the evidence for the requested issue, and the court would not have been warranted in submitting it. This disposes of the fifth assignment of error.

[6] The sixth and seventh assignments may be considered and disposed of as one. In substance, the complaint made by these assignments is that the jury's answer to special issue No. 2, establishing in appellees title to the entire tract of land in controversy by adverse possession under the ten-year statute of limitation, is not supported by the evidence upon that issue. In this connection counsel for appellants contend that the evidence showed, at the most, only an encroachment by appellees, through their tenant, upon the land in controversy, and that judgment should not have been rendered upon that issue in favor of appellees for any more of the tract than was included in and covered by such encroachment. In support of this contention counsel cite Bracken v. Jones, 63 Tex. 187; Holland v. Nance, 102 Tex. 177, 114 S. W. 348; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559, as well as a number of other cases following them. There can be no question now that the encroachment doctrine as announced in the cited cases is well established in this state, but its application is sometimes attended with difficulty. This court discussed at some length and applied that doctrine in Bailey v. Kirby Lumber Company (Tex. Civ. App.) 195 S. W. 221, and we have had occasion to do so since. It is our conclusion, however, that upon the facts of this case the encroachment doctrine has no application. We shall not attempt to discuss or mention all the facts in this case which bear upon the title asserted by appellees under the ten-year statute, because to do so would carry this opinion to an unreasonable length; but we will state the following, which we think will suffice to show that the jury's answer in favor of appellees on their plea of title under the ten-year statute has sufficient support in the evidence and cannot be disturbed by this court.

[7] The evidence shows that L. P. McFarland, prior to 1906, was the owner of a tract of land of approximately 56 acres, lying just east of the tract of land in controversy, but which tract had never been any part of the land in controversy. McFarland had been living upon his tract of land for a number of years prior to 1906, and had long known of the assertion of title by the Austin heirs, the appellees here, to the land in controversy, and had never disputed their asserted title. In 1906 McFarland entered into a written contract of tenancy with appellees, under the terms of which he became their tenant and agreed to hold the entire tract in controversy for them as their tenant, and bound himself to keep trespassers away. Under this contract

of tenancy McFarland cultivated from one and a half to two acres of the land in controversy continuously from the time he acknowledged such tenancy down to the date of this trial, and he testified that he at all times recognized appellees as the owners of the entire tract, and that he was their tenant and was upon the tract by their permission, and never at any time asserted any title or claim adverse to them. During the period of tenancy McFarland had portions of the tract inclosed by separate inclosures in no manner connected with his own tract of land, but part of the time he did extend fences from his own tract onto portions of the tract in controversy. Also, during the contract of tenancy, McFarland erected improvements upon the tract in controversy in addition to the inclosures, which he cultivated, and during all of such period of tenancy McFarland had actual and exclusive possession of the tract under his contract with appellees, according to his positive evidence. Some of the improvements erected by him upon the tract were a blacksmith shop and large wagon shed erected about 1907, or the next year after his contract of tenancy with appellees had been entered into, and this blacksmith shop and shed remained upon the tract and was in constant and exclusive use by McFarland until the storm in the fall of 1915 blew these improvements away. In 1913 McFarland erected a box house upon the tract in controversy, which was used by him in connection with his use of the tract. It was further shown without dispute that McFarland erected a sawmill upon the land in controversy about 1913, during his contract of tenancy with appellees, and in recognition of that relation with them, and that with their permission and authority, he sawed and manufactured into lumber much of the timber on the tract of land that had been blown down by the storm of 1915, and testified that all of this was in recognition of the title of the appellees, which he had always recognized. There were other minor improvements made by McFarland while a tenant of appellees upon this tract of land, and, according to his testimony, in recognition of their title, but it is unnecessary to further mention them in detail.

At the time of this actual possession and improvements upon and cultivation and use of the tract of land by McFarland, as we have above shown, there was of record in the Deed Records of Sabine county deeds and muniments of title under which the appellees in this case, other than McFarland, were asserting title to the entire tract of land in controversy, and therefore there can be no question but what McFarland's actual possession, use, and enjoyment and erection of the improvements mentioned were sufficient to bring notice home to the true owner of the land, if there was such other than appellees, that appellees were asserting title to this

tract of land and the whole of it, and, since this state of affairs was permitted to continue for something like eighteen years, at least, it must be held, in deference to the jury's verdict, that appellees have acquired title to the whole of this tract by adverse possession under the ten-year statute, whether they otherwise had title or not.

[8, 9] It is undoubtedly the law of this state that where one is in the actual possession of a tract of land, using, cultivating, or enjoying it, either in person or by his tenant, and claiming the same under a deed or other written muniment of title, describing the whole tract, his possession will be deemed coextensive with the boundaries stated in his deed or other written muniment of title, and he will acquire perfect title to the land, as so claimed and defined, under the ten-year statute, if such possession, use, and enjoyment continues for the required period. Article 5676, Revised Statutes; Porter v. Miller, 84 Tex. 204, 19 S. W. 467; Chapman v. Weaver (Tex. Civ. App.) 178 S. W. 660; W. T. Carter & Bro. v. Richardson (Tex. Com. App.) 236 S. W. 978; Evitts v. Roth, 61 Tex. 81. We have no doubt that the evidence in this case was clearly sufficient to warrant the finding of the jury that the appellees, through their tenant, McFarland, had had and held peaceable and adverse possession of the tract in controversy prior to the filing of this suit, and must overrule the sixth and seventh assignments of error. In doing this we have not overlooked the contention of appellants that it was shown by them that McFarland had recognized, before the ten-year statute had run, the title asserted by Judge Goodrich, and that, in effect, McFarland had agreed to hold possession under Judge Goodrich. McFarland positively denied this contention of appellants, and this was a question of fact for the determination of the jury, if it should be conceded that McFarland could attorn to Judge Goodrich without repudiating his contract of tenancy with the appellees and giving them notice thereof.

Upon the trial of the case, in due time, appellants requested the court to give to the jury this charge:

"You are instructed that an encroachment which does not appropriate some substantial portion of the land sufficient in extent to give notice to the owner of an adverse claim to his land by the trespasser, will not support a plea of limitation."

[10] The court committed no error in refusing this requested charge, because, as we think, it was argumentative and upon the weight of the evidence. The court, in order to guide the jury in answering the second special issue, gave them the statutory definition of adverse possession and peaceable possession, and, in addition thereto, gave the jury, at the request of appellants, the following special charge:

"You are further instructed as a part of the law of this case that the peaceable and adverse possession of land contemplated by law must be actual, continued, visible, notorious, distinct, and hostile. It must be fair and open and sufficient to charge the owner with notice of a substantial appropriation of the land in question."

Clearly, this special charge was sufficient, if anything further was necessary than had already been given by the court, to protect the rights of appellants on the limitation issue.

We have given counsel's brief in this case, as well as the entire record, full and careful consideration, and have concluded that no reversible error was committed upon the trial, and that the judgment should be in all things affirmed, and it has been so ordered.