**NORTHERN PACIFIC RAILWAY COMPANY and Continental Oil Company, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 6178.**

United States Court of Appeals Tenth Circuit.

March 12, 1960.

W. J. Wehrli, Casper, Wyo. (A. T. Smith and W. M. Griffith, Denver, Colo., were with him on the brief), for appellants.

Claron C. Spencer, Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., and Roger P. Marquis, Dept. of Justice, Washington, D. C., were with him on the brief), for appellee.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

The United States began this action against Northern Pacific Railway Company and Continental Oil Company to clear its asserted title to the mineral estate under a strip of land containing 30.12 acres in Park County, Wyoming. Recourse at the outset to the background against which the litigation was instituted may contribute to a clear perception of the questions presented and the manner in which they arose.

By the Act approved July 2, 1864, 13 Stat. 365, 367, Congress made a grant of public lands to Northern Pacific Railroad Company for the construction of railroad and telegraph facilities; and by the Act approved August 30, 1890, 26 Stat. 371, 391, 43 U.S.C.A. § 945, it was provided among other things that in all patents for lands thereafter taken up under any of the land laws of the United States or on entries or claims validated by such act, a right of way should be reserved from the land described in the patent for ditches or canals constructed by the authority of the United States. In 1896, Northern Pacific Railway Company became the successor in interest of Northern Pacific Railroad Company; and in 1906, it made certain lieu selections of land under the grant. Among other lands selected was Section 35, in Township 58 North, Range 98 West, now in Park County, Wyoming; and in 1908, a patent was issued conveying such section and other lands, but it failed to contain a reservation of a right of way for ditches or canals constructed by the authority of the

United States. In 1916, the United States was about to undertake the construction of the Frannie Canal, a unit of the Shoshone Project, across section 35 for reclamation purposes. It then discovered that the patent conveying the section to Northern Pacific failed to contain any reservation of a right of way for such purpose. The Bureau of Reclamation thereupon initiated correspondence with Northern Pacific relating to the situation. After interdepartmental correspondence and memoranda within Northern Pacific's organization and after extended correspondence between the Bureau of Reclamation and Northern Pacific, the latter executed and delivered to the United States a deed for the land constituting the right of way across the section, containing a total of 30.12 acres. The deed did not purport by express language to vest in the United States anything less than the full fee title. The United States constructed upon such right of way the ditch or canal and it was thereafter operated as the Frannie Canal. In 1946, the Northern Pacific entered into a contract with Continental Oil Company. The substance of the contract was to lease to Continental all of section 35 for the development of oil and gas. By express terms, the lease was subject to the rights granted to the United States under deeds dated October 23, 1916, and June 9, 1920, for a right of way for the Frannie Canal. In 1947, Continental obtained production of oil from section 35. It drilled eight wells. Seven produced. One was dry. None of the wells was on the right of way but some of them were adjacent thereto and probably were draining oil from it. In 1953, the United States issued to Allen F. Klindt an oil and gas lease covering a portion of the land embraced within the right of way on section 35.

The complaint as amended alleged the issuance of the patent; the notice to Northern Pacific that the United States intended to avail itself of the right of way across the section, reserved under the Act of 1890; the discovery of Northern Pacific upon receipt of the notice

that the patent did not contain a reservation of right of way as provided by the Act of 1890; the offer of Northern Pacific to give the United States a deed for such right of way as it required through the section for a nominal consideration; the acceptance of the offer; the execution and delivery of the deed which granted the fee-simple title; the ownership of the United States of the title in fee; the construction and operation of the canal; the discovery of oil; the issuance of the lease to Continental; the drilling of wells on the section but upon land other than the canal tracts; and the existence of a controversy between the United States and Northern Pacific concerning title to the canal tracts and oil royalties. The complaint as amended further alleged that Northern Pacific and Continental were barred by the statute of limitations and laches from asserting any claim to the land constituting the right of way or the oil and gas underlying such land. By answer, it was pleaded that prior to the execution and delivery of the deed, it was mutually agreed between the United States and Northern Pacific that the latter should convey to the former the right of way which the United States might have reserved; that in fulfillment of such agreement, the deed was executed and delivered; that it was the mutual intent and purpose of Northern Pacific and the United States that the deed should comprise only a conveyance of an easement or right of way for the Frannie Canal; that it was not the intent and purpose of either party that Northern Pacific should convey to the United States title to the land or title to the oil, gas and other minerals under such land; and that through mutual mistake, the deed was prepared and executed in the form in which it appeared of record. By counterclaim, reformation of the deed was sought and the right and interest of the United States in the land constituting the right of way limited to that of an easement or surface right of way. On motion of the United States, the counterclaim was stricken.

Finding that no mutual mistake occurred in the execution, delivery, and acceptance of the deed; concluding that by such deed the title in fee of the land constituting the canal was effectively conveyed to the United States; and further concluding that the asserted claim of title of Northern Pacific to the mineral estate in such land was barred by limitations and laches, the court entered judgment for the United States. D.C., 169 F.Supp. 735.

The provision contained in the Act approved August 30, 1890, to which reference has been made, concerns itself solely and exclusively with easements or surface rights of way for ditches and canals constructed by the United States. It reserves to the United States easements or surface rights for that purpose from lands patented under the land laws of the United States. That was its congressional purpose and it goes no further. United States v. Ide, 9 Cir., 277 F. 373, affirmed 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407; Green v. Wilhite, 14 Idaho 238, 93 P. 971. And an easement or surface right of that kind does not include title to the oil and gas underlying the land constituting the right of way. United States v. Union Pacific Railroad Co., 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed. 2d 693. It may well be that such easement or surface right of way across section 35 was reserved to the United States by virtue of the statutory provision even though the patent failed to contain any language of reservation. But that question is not presented and we do not explore it. Even though the patent had contained an appropriate provision of reservation in complete harmony with the statute, the estate reserved would have been only a surface right for the construction of ditches or canals. United States v. Ide, supra; Green v. Wilhite, supra. It would not have included title to the oil and gas lying underneath the land constituting the right of way. United States v. Union Pacific Railroad Co., supra. Upon the issuance of the patent, title in fee to the entire section passed to Northern Pacific. Such title

may have been subject to an easement or surface right of way for ditch and canal purposes. But title to the oil and gas underlying the land was not reserved.

The deed from Northern Pacific to the United States is not challenged for defect or deficiency in form to convey title to the land constituting the right of way, including the oil and gas underlying the land. The deed described the land by metes and bounds, and the description may have readily suggested or indicated to the mind of a reasonable person that the land in the form of a strip of uniform width was to be used for right of way purposes. But the deed did not undertake by express language to limit its effect to a surface right of that kind. There are cases in which it is held that where a warranty deed regular in form conveys to a railroad company a strip of land without containing language stating or indicating that the land is conveyed for purposes of a right of way only, the grantor or those claiming under him is not permitted to go outside of the deed and contend that it conveyed less than title in fee. Gilbert v. Missouri, Kansas & Texas Railway Co., 8 Cir., 185 F. 102; Kynerd v. Hulen, 5 Cir., 5 F.2d 160, certiorari denied, 269 U.S. 560, 46 S.Ct. 20, 70 L.Ed. 411; and other cases cited in the notes appended to Sherman v. Petroleum Exploration, 132 A.L.R. 137. But here, the United States alleged in its complaint that it notified Northern Pacific that it intended to avail itself of the right of way across section 35, reserved under the Act of 1890. The United States further alleged in its complaint that upon receipt of such notice, Northern Pacific discovered that the patent did not contain a reservation of right of way for ditches and canals as provided by such Act. And, the United States further alleged in its complaint that thereupon Northern Pacific offered to give the United States a deed for such right of way as it required for a nominal consideration; that such offer was accepted by the United States; that the deed was executed and delivered; and that it granted the fee-simple title without any reservation whatsoever to the lands therein described. By their answer, Northern Pacific and Continental pleaded in effect that the enlargement of the deed over the previously reached agreement of the parties as alleged in the complaint was occasioned by mutual mistake. In this manner, the issue of mutual mistake was brought into the case.

The essential elements of mutual mistake in a written instrument for which a court of competent jurisdiction may grant appropriate relief are that there was an antecedent agreement which the written instrument undertakes to evidence; that a mistake occurred in the drafting of the instrument and not in the antecedent agreement which it undertakes to evidence; and that in the absence of fraud or inequitable conduct on the part of one of the parties, the mistake is mutual. Russell v. Shell Petroleum Corp., 10 Cir., 66 F. 2d 864; Hayes v. Travelers Insurance Co., 10 Cir., 93 F.2d 568, 125 A.L.R. 1053. Here, all parties to the action pleaded in effect that the agreement into which Northern Pacific and the United States entered prior to the execution of the deed was that Northern Pacific would convey by deed to the United States the right of way which the United States was authorized by the Act of 1890 to reserve. All parties having pleaded such agreement, the only burden of proof resting upon Northern Pacific and Continental was to establish the fact that the execution, delivery, and acceptance of the deed having the effect on its face of conveying title in fee to the land constituting the right of way was attended by mutual mistake. The court found in effect that such burden of proof had not been discharged. But the finding is challenged upon the ground that it is plainly erroneous and without foundation in the record.

The evidence relating to the issue of mistake was found primarily in correspondence passing between the Bureau of Reclamation of the United States and Northern Pacific and in interdepart-

mental correspondence and memoranda of Northern Pacific. The correspondence between the Bureau and Northern Pacific was initiated by a letter from Willis J. Egleston, District Counsel of the Bureau, to Northern Pacific dated July 6, 1916. So far as material here, it was stated in substance in the letter that section 35 was subject to the provision contained in the Act of 1890, reserving to the United States a right of way thereon for ditches or canals constructed by the United States; and that the United States intended to exercise the right conferred by such provision for the construction and maintenance of the ditch or canal required in connection with the reclamation work authorized under the Reclamation Act, 32 Stat. 388. By a separate communication of the same date, the district counsel advised Northern Pacific that the Frannie Canal would cross section 35; that it was the understanding of the Bureau that the section was subject to the reservation contained in the Act of 1890; that in such case, the Bureau was required to give notice on the form enclosed with the letter; and that if Northern Pacific desired a more detailed description of the right of way claimed, the project office of the Bureau would furnish it. In an interdepartmental communication of Northern Pacific, dated July 12, it was stated by Grafton Mason, Land Attorney, that notice had been received from the Bureau that the Government claimed a right of way for a canal across section 35, under the Act of 1890; that while the patent did not contain the reservation which was required by the Act, the writer was very much inclined to the belief that the legal situation was the same as though the reservation had been inserted in the patent; that the district counsel had stated that his understanding was that the Government had the right of way and had asked to be advised if that was correct; and that it seemed to the writer that "we may avoid the question in the particular case by offering to give the government the right of way if they will indicate just what the

government requires. We should arrange with Mr. Penn so that the easement we have agreed to give him for his oil pipe line will not conflict with the government canal." At the outset of an interdepartmental memorandum of Northern Pacific dated July 21, attention was called to the letter from Egleston dated July 6, "in connection with right of way for the Frannie Canal * * *." Attention was also called to the opinion of Mason "with reference to the rights of the United States under the Act of 1890." And attention was called to a letter from the president of the pipe line company dated July 19 "with reference to easement for pipe line which we agreed to give his company but which may possibly conflict with the canal right of way." Still referring to the letter from the president of the pipe line company, it was further stated in the memorandum, "You will notice he is willing to agree that the easement when issued will be subject to the rights of the United States under the Act of 1890." And the memorandum continued, "In view of Mr. Egleston's statement that it is his understanding the United States owns the right of way required for the canal and there being nothing to interfere with our doing so, it is suggested that we offer to convey such right of way for a nominal consideration and thus settle the question. Do you approve?" A letter from the land attorney of Northern Pacific to the district counsel of the Bureau dated August 5 began by stating that it was in further answer "to your letter of July 6th, in regard to the right-of-way through section 35–58N–98W, for the Frannie Canal under the Act of August 30, 1890. * * * I am not prepared to say that the United States has not retained this right-of-way even though it is not mentioned in the patent. * * * There is no disposition on our part to object to the Government's right in this particular case, as we have not disposed of the land and the persons with whom we are negotiating for an easement for an oil pipe line across the section are content

to subject their rights to those of the Government. May I suggest that we give the United States a deed for such right-of-way as it requires through the section for a nominal consideration, thus putting at rest any legal question that may be involved insofar as this case is concerned. Should my suggestion meet with your approval, will you be good enough to furnish me a description of the right-of-way required." The Bureau furnished the description. Couched in terms of metes and bounds describing a strip uniformly one hundred and fifty feet in width, the description made repeated reference to "Frannie Canal Right of Way." Northern Pacific prepared the deed. It recited that "in consideration of the sum of one dollar ($1.00) unto it paid, in pursuance of the provisions of the Act of June 17, 1902, (32 Stat. 388), the receipt whereof is acknowledged," the land was conveyed to the grantee; and it described the land by metes and bounds in conformity with the description furnished by the Bureau. In a letter from the land attorney of Northern Pacific to the district counsel of the Bureau dated November 3, it was stated at the outset that a warranty deed had been prepared in accordance with the description furnished. It was then stated that before the deed was executed "I wish to advise you that on August 30, 1916, this company granted to Illinois Pipe Line Co. a license for a pipe line through section 35. * * * but the instrument was made subject to a right of way thereon for ditches or canals constructed by the authority of the United States as reserved by the Act of Congress of August 30, 1890, (26 Stats. at Large, page 391)." It was further stated that "It was assumed that the conveyance to the United States for canal purposes would be a quitclaim deed, but now that the warranty deed has been drawn up, it seems to me inconsistent to warrant title unless we insert in the deed a clause making the conveyance subject to any and all rights of the licensee under said instrument of August 30, 1916, which granted the li-

cense above referred to, but subject to right of way thereon for ditches, etc. Will such form of deed be satisfactory to you?" Replying to such letter, it was said in a letter from the district counsel for the Bureau, "You have stated that your license to Illinois Pipe Line Company through section 35 contained a reservation of right of way for ditches or canals constructed by authority of the United States and referred to the Act of Congress of August 30, 1890. This reference is correct and the irrigation works are the ones contemplated in this provision, therefore I do not follow your reasoning that the strip of land granted to the United States should contain a reservation in favor of the Pipe Line Company. It seems to me that the status of the reference would be completely stated and ultimately of record if a deed to the strip of land desired by the United States were made without reservation. However, I do not wish to insist upon this and if your view is as stated in your letter the United States will be very pleased to receive a deed with such reservation in it as you deem proper." In a letter from a land agent of Northern Pacific to the district counsel of the Bureau dated November 11, it was stated that Northern Pacific had concluded to issue the deed to the United States without making any reference to the easement granted to the pipe line company; and that as soon as executed, the deed would be sent forward. A copy of the deed was submitted to the Bureau for examination. The Bureau suggested certain minor changes. These were apparently made, and the deed was executed, delivered, and accepted. It was stated at the outset of an undated memorandum in the files of Northern Pacific that the "deed was issued to the United States covering right of way for the Frannie Canal of the United States Reclamation Service * * * for a nominal consideration," for the reason thereinafter stated. It was then stated as the reason that under the Act of 1890, grants of public lands were made subject to a right-of-way for canals or ditches con-

structed by the United States; that such provision of reservation had been construed by the United States and concurred in by the attorney for Northern Pacific to cover right of way for canals and ditches thereafter constructed by the United States whether the reservation was recited in the patent or not; that section 35 fell within the category even though no reference to the reservation was made in the patent to the statute; that the Reclamation Service was constructing the canal across the section and invoked the statute for the right of way; and that the deed was issued to vest the record title in the United States.

In 1919, the United States was engaged in the development of plans for the construction of an additional unit of the Shoshone project, and in connection therewith, it needed a canal across a portion of section 35 and other lands. Correspondence relating to the right of way was begun by a letter from the district counsel of the Bureau of Reclamation to the land commissioner of Northern Pacific, dated October 18, 1919. It was stated at the outset of the letter, "Please refer to correspondence and record of negotiations in 1917 as a result of which your company made a donation deed for right of way through section 35 * * * in connection with the development of the Shoshone project of the Reclamation Service. The right of way acquired at that time was for the Frannie Canal * * *. In connection with the correspondence of 1917 regarding the right of way for canal to which you made donation deed, there was a difference of opinion regarding the right of the United States to take the right of way for canal under the provisions of the Act of August 30, 1890. It is recalled that you did not permit this discussion to come to an issue and that you made donation deed when this office furnished you a description by metes and bounds of the right of way desired." In reply to such letter, the land commissioner advised the district counsel that he had received authority to convey to the United States for a nominal consideration right of way for the Frannie Canal extension and main laterals and spillways located on section 35 and two other sections; and that if furnished a complete description to be incorporated "in the easement, we will proceed to prepare the necessary papers." After some intervening correspondence, the district counsel forwarded to the land commissioner a form of deed conveying the land to constitute the right of way and requested that it be executed and returned. The deed—dated June 9, 1920,—contained a provision expressly reserving to Northern Pacific all minerals including oil and gas underlying such land. The deed was executed, delivered, and accepted.

From 1917 to 1954, Northern Pacific filed annually in the office of the Assessor of Park County assessment schedules in which deductions in acreage from all of section 35 or the portion thereof scheduled were made for the land constituting the right of way for the canal. In 1928, an application was filed in the United States District Land Office at Cheyenne, Wyoming, for a government oil and gas lease upon certain lands, including the northwest quarter of section 35. The application was rejected; and as to that tract a notation was made in the official record that it was Northern Pacific land. Later, in 1928, a second application was filed for a lease covering certain lands, including all of section 35. The application was rejected with a notation in the official record that all of the land was Northern Pacific land. And in 1943, a third application was filed which included the north half of the north half of section 35. Two notations were made in the official record. One read "Unrestricted patented land, U.P.Sel., as to all land in Sec. 27 and 35." The other read "Appln. rejected as to all land in secs. 27 and 35." It is suggested in the brief of Northern Pacific and Continental, and not challenged in the brief of the United States, that the first notation inadvertently referred to the Union Pacific Railroad Company instead of Northern Pacific.

■ Considered in its entirety and giving to each portion thereof the weight to which it is appropriately entitled, we think the evidence makes it clear that from the inception of their negotiations to the execution, delivery, and acceptance of the deed, the United States and Northern Pacific understood that they were dealing with each other solely and exclusively respecting a surface right for the construction, operation, and maintenance of a ditch or canal for reclamation purposes of the character and kind which the Act of 1890 authorized the United States to reserve unto itself. The question whether such surface right had been effectively reserved even though the patent was silent in respect thereto presented itself to both parties. The United States asserted with confidence that the reservation had been effectuated by operation of the statute without any provision relating thereto being in the patent, and Northern Pacific was inclined to the same view. But desiring to obviate an effective determination of that question in the particular case, Northern Pacific offered to convey by deed to the United States the right of way with the same force and effect as though the reservation had been expressly made in the patent. The United States accepted the offer. And the deed was executed, delivered, and accepted for the purpose of carrying into effect the mutual understanding and agreement of the parties. It was not intended to have any other purpose. Throughout the extended correspondence, no reference was made to a conveyance of title in fee to the land to constitute the right of way. It all referred consistently and without deviation to a right of way for ditch or canal purpose. The mutual focal point of their negotiations was a surface right for the construction, operation, and maintenance of a canal. Vesting in the United States a surface right of that kind was the mutual focal point of their purpose in the execution, delivery, and acceptance of the deed. While not so stated categorically at any one juncture in the course of their negotiations, it is manifest from

the record as a whole that the mutual objective and purpose of the parties in the execution, delivery, and acceptance of the deed was to vest in the United States record title to the surface right in the land for canal purposes identical in scope and effect with that which the Act of 1890 empowered the United States to reserve unto itself. And the grant or conveyance of a surface right of that kind does not include the oil and gas underlying the land. United States v. Union Pacific Railroad Co., supra. While the deed did not undertake by express language to limit its effect to a conveyance of a surface right of that kind, its execution, delivery, and acceptance without such limitation represented a mutual mistake of the parties in the drafting, execution, delivery, and acceptance of the deed for the purpose of fulfilling and carrying into effect their agreement. And being attended by such mutual mistake, the deed did not vest in the United States title to the oil and gas underlying the land constituting the right of way.

■■ As indicated in the opinion of the trial court, the judgment was also based upon the further ground that the ten-year statutes of limitation of Wyoming, W.C.S.1957, §§ 1–13, 1–21, applied with the result that Northern Pacific and Continental were barred from asserting as a defense right or title in the oil and gas underlying the land constituting the right of way. After the dismissal of their counterclaim, Northern Pacific and Continental were before the court without any counterclaim, cross claim, cross action, or other like pleading. The United States in its capacity as plaintiff in the action invoked the statute of limitations. It is the general rule of wide application that the statute of limitations is available in judicial proceedings only as a defense and can never be asserted by a plaintiff as a cause of action in him or as conferring upon him an affirmative right of action. The principle has sometimes been expressed in the figure of speech that the statute is available only as a shield, not as a

sword. Talbott v. Hill, 49 App.D.C. 96, 261 F. 244; Weems v. Carter, 4 Cir., 30 F.2d 202; Champ Spring Co. v. United States, 8 Cir., 47 F.2d 1, certiorari denied, 283 U.S. 852, 51 S.Ct. 560, 75 L.Ed. 1459; Cassell v. Lowry, 164 Ind. 1, 72 N.E. 640; Fowler v. Taylor, 97 N.H. 294, 86 A.2d 325; Braue v. Fleck, 23 N.J. 1, 127 A.2d 1; Spect v. Spect, 88 Cal. 437, 26 P. 203, 13 L.R.A. 137; Corlett v. Mutual Benefit Life Insurance Co., 60 Kan. 134, 55 P. 844; Olinda Irrigated Lands Co. v. Yank, 27 Cal.App.2d 56, 80 P.2d 170; Federal Farm Mortgage Corp. v. Schmidt, 109 Colo. 467, 126 P.2d 1036; People v. Grant, 52 Cal.App.2d 794, 127 P.2d 19; Greenley v. Lilly, 155 Kan. 653, 127 P.2d 416; Boettcher v. Criscione, 180 Kan. 39, 299 P.2d 806; Patton v. Champion Fibre Co., 192 N.C. 48, 133 S.E. 174; Stock v. Schloman, 322 Mo. 1209, 18 S.W.2d 428; Title Insurance & Trust Co. v. City of Paducah, 275 Ky. 392, 121 S.W.2d 932; Pyron v. Colbert, Tenn.App., 328 S.W.2d 825.

The case of Town of Glenrock v. Abadie, 71 Wyo. 414, 259 P.2d 766, is not to the contrary. There the Town of Glenrock instituted the action to quiet its title to a tract of land. In doing so, it pleaded ownership and also title by adverse possession. Cora H. Skinner was joined as a party defendant. By cross petition, she alleged that she was the owner and in possession of an undivided one-half of the mineral interest in the land concerned, and she prayed that her title thereto be quieted. It was held that when the cross petition was filed in which affirmative relief was sought, the town had the right to plead limitations to the cause of action pleaded in the cross petition. No fairly comparable situation was presented here.

■ As further reflected in the opinion of the trial court, the judgment was also rested upon the further ground that Northern Pacific was guilty of laches. Again, the United States in its capacity as plaintiff pleaded laches on the part of Northern Pacific. Again, after the dismissal of their counterclaim, Northern Pacific and Continental did not seek affirmative relief by counterclaim, cross complaint, cross action, or other like pleading. And again, quite similar to limitations, laches is available only as a bar to affirmative relief. It cannot be invoked by plaintiff to bar rights asserted by defendant merely by way of defense. Code v. Seattle Theatre Corp., 162 Wash. 379, 298 P. 432; Duck v. McQueen, 263 Mich. 325, 248 N.W. 637; Frey v. Geuder, Paeschke & Frey Co., 4 Wis.2d 257, 90 N.W.2d 765; Whitlock v. Creswell, 190 S.C. 314, 2 S.E.2d 838; Meadows v. Hardcastle, 219 Ark. 406, 242 S.W.2d 710.

■ For another reason, neither limitations nor laches foreclosed Northern Pacific and Continental from defeating recovery on the part of the United States purely upon the defensive and non-affirmative ground that Northern Pacific owned the oil and gas underlying the land constituting the right of way and that Continental held rights as lessee under Northern Pacific. It is implicit in the statute of limitations that it does not begin to run until there is someone capable of instituting the action, someone subject to be sued, and a tribunal open for such suits. Yager v. Liberty Royalties Corp., 8 Cir., 123 F.2d 44; Collier v. Goessling, 6 Cir., 160 F. 604, certiorari denied, 215 U.S. 596, 30 S.Ct. 399, 54 L.Ed. 342; Peyton v. Chase County National Bank, 124 Kan. 763, 262 P. 595. On account of the immunity of the United States from suits without its consent, Northern Pacific and Continental could not institute against it an action for the determination of their asserted rights in such oil and gas. No court was open for the entertainment of such an action. Under the circumstances, limitations did not foreclose the defense of ownership of the canal strip and the oil and gas underlying it. Collier v. Goessling, supra. And laches cannot be imputed to one who is without remedy or right of action. Cross v. Janes, 327 Ill. 538, 158 N.E. 694; Ward v. Meredith, 186 Iowa 1108, 173 N.W. 246; Lecroix v. Malone, 157 Ala. 434, 47 So. 725. Again, on account of the immunity

of the United States from suit without its consent, Northern Pacific and Continental were without judicial remedy. And, therefore, they were not foreclosed in this action by laches. Cf. Lecroix v. Malone, supra.

The judgment is reversed and the cause is remanded with directions to dismiss the action with prejudice.